**Richard SCHULTZ and Gail Schultz,**
**Appellants–Plaintiffs,**

v.

**FORD MOTOR COMPANY,**
**Appellee–Defendant.**

No. 49A02–0309–CV–749.

Court of Appeals of Indiana.

Feb. 21, 2005.

Rehearing Denied April 13, 2005.

in using Instruction 23 because the presumption at issue was not a proper subject for jury instruction.[1]

We reverse and remand for a new trial.

Bruce D. Aukerman, Mann Law Firm, Terre Haute, IN, Roger L. Pardieck, The Pardieck Law Firm, Seymour, IN, Craig R. McClellan, John H. Gomez, McClellan & Gomez, San Diego, CA, Attorneys for Appellants.

Kevin C. Schiferl, Nelson D. Alexander, Julia Blackwell Gelinas, Robert B. Thornburg, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Richard and Gail Schultz appeal the jury verdict in favor of Ford Motor Company ("Ford") on their product liability and negligence claims, contending that the trial court erred by using Final Instruction No. 23 ("Instruction 23"), which informed the jury that there was a rebuttable presumption that Ford was not negligent in its design of the Ford Explorer if it complied with Federal Motor Vehicle Safety Standard ("FMVSS") 216, concerning roof crush resistance. On appeal, the Schultzes raise the following consolidated and restated issue: whether the trial court erred

## FACTS AND PROCEDURAL HISTORY[2]

On December 30, 1997, Richard Schultz, a resident of Terre Haute, was driving his Ford Explorer westbound on Indiana State Road 2. Near Lowell, Indiana, where the posted speed limit was 45 miles per hour ("mph"), Schultz noticed ice on the side of the road and slowed his vehicle to a speed between 35 and 40 mph. As he rounded a gradual curve in the road, the Explorer hit a patch of black ice, and Schultz lost control. Trying to avoid an accident, Schultz steered the vehicle to the left, crossed both lanes of traffic and, with the Explorer's right side leading, slid off the left side of the highway.

Upon leaving the roadway, the Explorer hit and traversed a ditch and smashed into an embankment. The Explorer then climbed the embankment and continued to slide sideways. Moving at a speed between 15 and 17 mph, the Explorer rolled over, hit the ground on the driver's side roof causing it to collapse one foot, and landed on its wheels. As a result of the accident, Schultz suffered a cervical cord injury and was rendered a quadriplegic.

The Schultzes originally brought suit on December 29, 1999, seeking compensatory

---

1. The Schultzes also argue that the savings clause of the National Traffic and Motor Vehicle Safety Act of 1966, which states that "[c]ompliance with a motor vehicle safety standard ... does not exempt a person from liability at common law," 49 U.S.C. § 30103(e), expressly preempts manufacturers from using FMVSS 216 as either a defense or to provide exemption from liability. However, because of our disposition of the Schultzes' first issue, we do not address this second issue.

2. Oral argument was held on October 4, 2004, at the University of Notre Dame Law School. We thank Associate Dean Walter F. Pratt, Jr. for organizing the event and the faculty, staff, and students of the Notre Dame Law School for their hospitality. We also commend counsel for both parties on the quality of their written and oral appellate advocacy.

damages from Ford based on its negligence and defective design of the roof. On October 10, 2002, they amended their complaint to add a punitive damage claim based on Ford's reckless indifference to consumer safety in designing the Explorer roof. In response, Ford filed a motion for summary adjudication of the punitive damage claim, which the trial court denied on April 3, 2003.

Prior to the eight-week trial, the Schultzes filed a trial brief objecting to the giving of any jury instruction, similar to Instruction 23, that was derived from either IC 34–20–5–1 of the Indiana Product Liability Act ("IPLA") or Indiana Pattern Jury Instruction 7.05(D), both of which focus on the creation of a rebuttable presumption of Ford's non-negligence upon proof of compliance with a federal safety standard. During trial, the Schultzes again objected to such an instruction by filing a supplemental brief on the issue. The trial court ruled against the Schultzes and, over the Schultzes' continuing objection, read Instruction 23 to the jury at the end of trial.

On August 9, 2003, the jury returned its verdict in favor of Ford on both the claims for compensatory and punitive damages. The Schultzes now appeal.

## BACKGROUND

### FMVSS 216

The National Traffic and Motor Vehicle Safety Act of 1966 ("Safety Act") was enacted to "reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101.[3] The Safety Act defines "motor vehicle safety standard" as "a minimum standard for motor vehicle or motor vehicle equipment performance." 49 U.S.C. § 30102(a)(9).

The Senate Report accompanying the original Safety Act bill stated that "[t]he federal minimum safety standards need not be interpreted as restricting state common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S.Rep. No. 1301, 89th Cong., 2d Sess., reprinted in 1996 U.S.Code Cong. & Admin. News 2709, 2720. The House report stated that "[Congress] intended, and [the savings clause] specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law, particularly those relating to ... tort liability." H.R.Rep. No. 1776, 89th Cong., 2d Sess. 24 (1966). "[T]he saving[s] clause reflects a congressional determination that occasional nonuniformity is a small price to pay for a system in which juries not only create, but also enforce, safety standards, while simultaneously providing necessary compensation to victims." *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 1920, 146 L.Ed.2d 914 (2000).

*Rogers ex rel. Rogers v. Cosco, Inc.*, 737 N.E.2d 1158, 1164–65 (Ind.Ct.App.2000), *trans. denied.*

FMVSS 216 is a safety standard pertaining to roof crush resistance. It was adopted by the National Highway Traffic Safety Administration in 1971 and had changed little by the time of the Schultzes' 1997 accident.

### Product Liability

"In modern usage, the phrase 'products liability' refers broadly to the decisional and statutory law permitting money damages to be levied against manufacturers and sellers of defective products that in-

---

**3.** This section was enacted as 15 U.S.C § 1381, and thereafter amended.

jure persons or property." 1 DAVID G. OWEN, M. STUART MADDEN, MARY J. DAVIS, MADDEN & OWEN on PRODUCTS LIABILITY § 1.5 at 14–15 (3d ed.2000). Prior to passage of the IPLA, "Indiana recognized strict liability in tort as embodied in § 402A of the *Restatement (Second) of Torts* (1965), which imposes liability on manufacturers and sellers for injuries caused by unreasonably dangerous products." *Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069, 1072 (Ind.1993), *modified on other grounds by* 644 N.E.2d 84 (Ind.1994) (citing *Ayr–Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 93, 300 N.E.2d 335, 340 (1973)).

The IPLA was enacted in 1978. *Progressive Ins. Co. v. General Motors Corp.*, 749 N.E.2d 484, 487 n. 2 (Ind.2001). As originally enacted, it covered claims in tort under theories of negligence and strict liability. *Id.* (citing IC 33–1–1.5–1 (1983) (now repealed)). In 1983, the IPLA was amended to apply to strict liability actions only. Pub.L. No. 297–1983, § 1. These strict liability claims merged the concept of implied warranty with the tort of negligence. In these suits, it was unnecessary to have direct privity between the seller and the defendant, and liability attached even if the manufacturer's quality control in producing the defective product was reasonable. 3 MADDEN & OWEN on PRODUCTS LIABILITY, app. B, § 1 at 33. In 1995, the legislature reversed course and changed the IPLA to once again cover both negligence and strict liability claims. *Progressive Ins.*, 749 N.E.2d at 487 n. 2 (citing Pub.L. No. 278–1995, § 1).

After the enactment of the 1995 amendments, recovery under the IPLA for strict liability was available only in manufacturing defect cases, i.e., where an injured party claims that a product fails to conform to plans and specifications as a result of a manufacturing defect. Joseph R. Al-

berts, David M. Henn, *Survey of Recent Developments in Indiana Product Liability Law*, 34 IND. L.REV. 857, 882 (2001); James L. Petersen, *Tort Reform, Act No. 1741*, 39 RES GESTAE 24, 24 (Sept. 1995). By contrast, proof of negligence was required to recover in cases alleging a failure to adequately warn or, in a case such as this, to recover for damages caused by a defect in product design. Petersen, 39 RES GESTAE at 24.

Prior to the 1995 amendments, compliance with state-of-the-art was an affirmative defense to a strict liability action claiming design defect. As such, the burden was on the manufacturer to prove that it developed the product using standards of design conforming to generally recognized state of technological or scientific knowledge existing at the time of manufacture. Timothy C. Caress, *1996 Survey, Recent Developments in the Indiana Law of Products Liability*, 29 IND. L.REV. 979, 1000 (1996); *Indianapolis Athletic Club, Inc. v. Alco Standard Corp.*, 709 N.E.2d 1070, 1075 (Ind.Ct.App.1999), *trans. denied; Montgomery Ward & Co. v. Gregg*, 554 N.E.2d 1145, 1155 (Ind.Ct.App.1990). Mere proof of compliance with then-existing standards was not sufficient.

After 1995, state-of-the-art as an affirmative defense was repealed and replaced with a rebuttable presumption that a product is non-defective and the manufacturer is not negligent if the product meets state-of-the-art safety standards. IC 34–20–5–1; *see* J. ALEXANDER TANFORD, INDIANA TRIAL EVIDENCE MANUAL § 7.04 (5th ed.2003) (citing IC 34–20–5–1); Caress, 29 IND. L.REV. at 1000. The legislature also created a rebuttable presumption that a product is not defective and the manufacturer is not negligent if the product complies with applicable state or federal codes, standards, regulations, or specifications (also referred to as "governmental compliance presump-

tion"). IC 34–20–5–1. This governmental compliance presumption was something new and arose in response to manufacturers' complaints that courts were giving insufficient weight to their compliance with government safety standards.[4] Caress, 29 IND. L.REV. at 1001.

### STANDARD OF REVIEW

The Schultzes contend that it was reversible error for the trial court to use Instruction 23 when instructing the jury as to the governmental compliance presumption. Ford asserts that its compliance with FMVSS 216 created a presumption that Ford was not negligent and was thus proper as a jury instruction.

In *Wal–Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893–94 (Ind.2002), our supreme court set forth our standard of review as follows:

> In reviewing a trial court's decision to give or refuse a tendered instruction, this Court considers whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions. *Whitney v. State*, 750 N.E.2d 342, 344 (Ind.2001). The trial court has discretion in instructing the jury, and we will reverse on the last two issues only when the instructions amount to an abuse of discretion. When an instruction is challenged as an incorrect statement of the law, however, appellate review of the ruling is de novo. *Cf. Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998).

The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to "comprehend the case clearly and arrive at a just, fair, and correct verdict." *Northrop Corp. v. General Motors Corp.*, 807 N.E.2d 70, 94 (Ind.Ct. App.2004), *trans. denied*. *See also Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 287 (Ind.Ct.App.2003), *trans. denied; Centennial Mortgage, Inc. v. Blumenfeld*, 745 N.E.2d 268, 278 (Ind.Ct.App. 2001). Jury instructions are to be considered as a whole and in reference to each other. *Sikora v. Fromm*, 782 N.E.2d 355, 361 (Ind.Ct.App.2002), *trans. denied* (2003). Additionally, an instruction that singles out or gives undue prominence to a particular fact or evidence is erroneous. *Underwood v. Gale Tschuor Co., Inc.*, 799 N.E.2d 1122, 1132 (Ind.Ct.App.2003), *trans. denied* (2004); *Hartford Steam Boiler Inspection & Ins. Co. v. White*, 775 N.E.2d 1128, 1142 (Ind.Ct.App.2002), *trans. denied* (2003).

Where we conclude that a trial court erred in instructing the jury, reversal is not always warranted. *Armstrong*, 785 N.E.2d at 287. However, if an instruction incorrectly states the law, this court will "assume that the erroneous instruction influenced the verdict and will reverse unless the verdict would have been the same under a proper instruction." *Wright*, 774 N.E.2d at 895.

### DISCUSSION AND DECISION

Prior to and during trial, the Schultzes objected to the trial court reading Instruc-

---

**4.** Because a product with a manufacturing defect is unlikely to comply with governmental standards for such products, this provision will ordinarily apply only to design and warning cases. Caress, 29 IND. L.REV at 1001. "Thus, in a design or warning case, to overcome the presumption[,] the plaintiff must show that the reasonably prudent manufacturer would have taken additional precautions even though its product complied with governmental regulations. However, because these cases are now governed by negligence principles, the evidence of negligence that the plaintiff must introduce in order to prevail on a negligence theory should be sufficient to demonstrate that the reasonably prudent manufacturer would have gone beyond the regulatory requirements in question." *Id.*

tion 23 based on Ford's compliance with FMVSS 216. On appeal, they again argue that the trial court erred in giving Instruction 23.

### I. Waiver

Prior to responding to the Schultzes' argument that Instruction 23 is an incorrect statement of law, Ford contends that the Schultzes have waived this issue. Citing to Ind. Appellate Rule 46(A)(8)(e), Ford argues that, in order to appeal the use of this instruction, the Schultzes were required to include a verbatim copy of the instruction and the verbatim objections thereto in the argument section of their brief. Ford contends that failure to comply with this rule results in waiver. *Collins v. State*, 509 N.E.2d 827, 831 (Ind.1987) (analyzing Ind. Appellate Rule 8.3, the predecessor to Rule 46).

The requirements under Rule 46(A)(8)(e) are more than mere formality. *Reed v. State*, 702 N.E.2d 685, 690 (Ind. 1998) (analyzing the predecessor to Ind. Appellate Rule 46). They play an important role in assuring that this Court has a complete and accurate record of what transpired before the trial court. *Id.* "In the context of jury instruction issues, the requirements ensure that the Court has a record of what the jury was actually instructed so that it may make informed decisions as to the propriety and the consequences of the giving or the refusing of any instructions." *Id.*

Here, the Schultzes set forth the verbatim language of Instruction 23 on pages 2–3 of their brief. *Appellants' Brief* at 2–3. Furthermore, while the extensive nature of the Schultzes' objections to Instruction 23 prevented them from setting forth their verbatim objections, the *Appellants' Brief* references the appendix pages on which these objections can be found. *Appellants' Brief* at 2 (citing *Appellants' Appendix* at 85–101). Both Ford and the trial court

fully understood the language to which the Schultzes objected and the reasons for that objection. As such, we find that the Schultzes did not waive this issue on appeal. *See Wilkinson v. Swafford*, 811 N.E.2d 374, 380 n. 5 (Ind.Ct.App.2004) (allowing the review of an instruction when it is included in the appellant's appendix).

### II. The Instruction on Governmental Compliance Presumption

At trial, the Schultzes objected to any jury instruction derived from either IC 34–20–5–1 or Indiana Civil Pattern Jury Instruction 7.05(D) based on Ford's purported compliance with FMVSS 216.

IC 34–20–5–1 provides:

> In a product liability action, *there is a rebuttable presumption* that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product:
>
> (1) was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or
>
> (2) complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana.

IC 34–20–5–1 (emphasis added).

Indiana Civil Pattern Jury Instruction 7.05(D) was modeled after this statute and provides:

> The defendant has alleged the product was manufactured in conformity with the state of the art [or complied with applicable codes]. The defendant has the burden of proving this allegation.

If you find the defendant has proved by a preponderance of the evidence that before the product was sold by the manufacturer, the product:

1. was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or

2. complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana. [sic]

then you *may presume* the product was not defective [or the defendant was not negligent] and find for the defendant.

However, if the plaintiff has introduced evidence tending to disprove either of the above propositions, then you may, but are not required to, find the product was defective.[5]

INDIANA PATTERN JURY INSTRUCTION (Civil) 7.05(D) (2d ed.2003) (emphasis added).[6]

The trial court instructed the jury using Instruction 23, which in turn was modeled after Pattern Instruction 7.05(D) and provided as follows:

Ford Motor Company has alleged that the Plaintiffs' 1995 Ford Explorer complied with the Federal Motor Vehicle Safety Standard 216. Ford Motor Company has the burden of proving this allegation.

If you find Ford Motor Company has proved by a preponderance of the evidence that before the 1995 Ford Explorer was sold by Ford Motor Company that it complied with Federal Motor Vehicle Safety Standard 216 then you *may presume* that Ford Motor Company was not negligent in its design of the 1995 Ford Explorer and that the Ford Explorer was not defective.

However, the Plaintiffs may rebut this presumption if they introduced evidence tending to show that the 1995 Ford Explorer was defective.

*Appellants' Appendix* at 54 (emphasis added).

### III. Presumptions versus Inferences

■ On appeal, the Schultzes argue that it was reversible error for the trial court to use Instruction 23 to inform the jury about the governmental compliance presumption. Specifically, the Schultzes contend that it was error for the trial court to use Instruction 23 because: (1) the governmental compliance presumption in IC 34–20–5–1, the statute upon which the instruction is based, has no evidentiary value; and (2) the only purpose of IC 34–20–5–1 is to impose a burden upon the plaintiff to produce evidence to rebut the presumption and, once that burden is met, the presumption serves no further purpose and drops from the case. *Appellants' Brief* at 9 (citing *Cansler v. Mills*, 765 N.E.2d 698, 705 (Ind.Ct.App.2002), *trans. denied; McClain v. Chem–Lube Corp.*, 759 N.E.2d 1096, 1103 (Ind.Ct.App.2001), *trans. denied* (2002)). We agree.

---

**5.** While recognizing Pattern Instruction 7.05(D) was modeled after IC 34–20–5–1, there is a significant difference between the two. The statute creates a mandatory presumption with the words *"there is a rebuttable presumption,"* while use of the words *"may presume"* in the pattern jury instruction appears to create a permissive inference.

**6.** The Indiana Pattern Jury Instructions are prepared under the auspices of the Indiana Judges Association and the Indiana Judicial Conference Criminal and Civil Instruction Committees. Although not formally approved for use, Indiana Trial Rule 51(E) tacitly recognizes their acceptance.

The Schultzes assert that IC 34–20–5–1 creates a rebuttable *presumption*, which imposes a burden of production—not proof—and, hence, is an improper subject of jury instruction. Ford replies that the presumption of non-negligence under the IPLA is closer to a statutorily recognized inference and, as such, is appropriate for use as an instruction to the jury. Because this distinction is key to our holding in this case, we provide background on these two concepts.

It has been said that "presumption" is one of the slipperiest members of the family of legal terms. JOHN W. STRONG, McCORMICK ON EVIDENCE § 342 (5th ed.1999). "A presumption is an assumption of fact resulting from a rule of law that requires the fact to be assumed from another proven fact or group of facts. Stated differently, a presumption is a declaration of public policy that if a litigant presents evidence of a specified set of facts, then an additional fact will be presumed to exist." 12 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, INDIANA EVIDENCE § 301.101 (2d ed.1995). "A presumption is a doctrine of substantive law, not evidence." TANFORD, § 7.01. Civil presumptions generally relieve the party with the burden of proof of the necessity of presenting evidence on an issue in order to withstand a directed verdict. *Id.* If uncontested, a presumption usually becomes conclusive. Presumptions are simultaneously governed by Evidence Rule 301, case law, and statutes, therefore, "this area of law is a nightmare." *Id.* at § 7.02.

■ The distinction between a presumption and an inference is perhaps best understood by noting that "a presumption is a deduction that the law requires the trier of fact to make if it finds a certain set of facts." *Matter of Estate of Borom,* 562 N.E.2d 772, 775 (Ind.Ct.App.1990). Thus, a presumption differs from an inference, which the trier may or may not make according to his own conclusions drawn from the facts adduced at trial. *Id.* A presumption is mandatory, while an inference is permissive. *Id.*

Judge Robert Lowell Miller, Jr., in his treatise on Indiana Evidence, describes the difference between an inference and presumption as follows.

Inferences differ from presumptions in at least three particulars. First, presumptions are mandatory unless rebutted; the presumed fact must be taken as true in the absence of evidence to the contrary. Inferences are permissible, but never mandatory, when the evidence is being weighed; the trier of fact is not required to draw inferences.

Second, presumptions are not weighed in the sense evidence is weighed if contrary evidence is produced, although a presumption met by rebutting evidence may effectively become an inference under Rule 301. An inference remains in the case despite the presentation of contrary proof and may be weighed with all the other evidence.

Third, a presumption need not be based entirely upon logical probabilities; public policy, social convenience, safety or procedural convenience may lead to the creation of a presumption. An inference, however, must be logical. Inferences also must be based on evidence.

12 MILLER, § 301.101 (footnotes omitted).

Under IC 34–20–5–1, once a manufacturer proves by a preponderance of the evidence that it has complied with a relevant safety standard, even a minimum standard such as FMVSS 216, "there *is a rebuttable presumption* that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent." IC 34–20–5–1 (emphasis added). This

presumption is mandatory and, unless rebutted, allows the conclusion that the manufacturer was not negligent. The governmental compliance presumption does not arise logically, but instead is a legislative fiction created to address the public policy concerns that manufacturers do not get adequate credit for complying with governmental standards. As such, we conclude that IC 34–20–5–1 creates a mandatory presumption and not a permissive inference.[7]

In *McClain*, we analyzed the statutory language in IC 34–20–5–1 as a presumption and not an inference. Quoting our supreme court's discussion of presumptions generally, we noted:

[A] presumption of law is not evidence nor should it be weighed by the factfinder as though it had evidentiary value. Rather, a presumption is a rule of law enabling the party in whose favor it operates to take his case to the trier of fact without presenting evidence of the fact presumed. It serves as a challenge for proof and indicates the party from whom such proof must be forthcoming. When the opponent of the presumption has met the burden of production thus imposed, however, the office of the presumption has been performed; the presumption is of no further effect and drops from the case.

*McClain*, 759 N.E.2d at 1101. Likewise, in *Cansler*, we commented that the "rebuttable presumption under [IC] 34–20–5–1 does not shift the burden of proof but it does impose upon the opposing party a burden of producing evidence. If the opponent produces evidence that rebuts the presumption, it serves no further pur-

pose." *Cansler*, 765 N.E.2d at 705 (citations omitted).

 Professor Tanford describes the significance of IC 34–20–5–1's governmental compliance presumption as follows:

This presumption helps the defense on summary judgment, but is of no importance at trial. A presumption relieves a party of the necessity to offer evidence on an issue for which the party bears the burden of proof. The product liability act places the burden of proof concerning defectiveness and negligence on the *plaintiff.* However the presumption does not relieve plaintiff of that burden. It relieves the *defendant* of having to prove absence of defect and absence of negligence—issues on which the defendant never had a burden of proof to begin with. Also, presumptions are considered rebutted when the opponent comes forward with contrary evidence. In a product liability action, the opponent of this statutory presumption is the plaintiff, who must come forward with evidence of defectiveness and negligence to rebut it. However, plaintiff must *already* come forward with evidence on these two issues to avoid judgment on the evidence. Until the judge rules that plaintiff has made a prima facie case, defendant has no obligation and *no opportunity* to present any evidence in its own favor. The product liability presumption is not triggered until the defendant presents proof of state-of-the-art design or compliance with safety codes, by which time the plaintiff will have already rebutted it in its own case-in-chief. The presumption has no practical effect.

---

**7.** We agree that the language "may presume"—found in both Pattern Instruction 7.05(D) and Instruction 23—creates a permissive inference. Nevertheless, we are bound

by the language of IC 34–20–5–1, which makes a finding of non-negligence mandatory upon proof of compliance with safety standards.

TANFORD, § 7.04 (emphasis in original). As Professor Tanford so clearly explains, the governmental compliance presumption helps Ford on a motion for summary judgment or a directed verdict, but an instruction explaining this presumption has no evidentiary value and no practical effect at trial.[8]

Accordingly, the trial court erred in giving this instruction. Instruction 23 and Pattern Instruction 7.05(D) on which it was based create a permissive inference about which a jury could be instructed. However, they do not properly reflect the language of IC 34–20–5–1, which creates a mandatory presumption of substantive law. The rebuttable presumption of IC 34–20–5–1 is not evidence; instead, it should be used as guidance for the court and not as evidence for the jury. Instruction 23 is an incorrect statement of the law, and the trial court erred in giving it to the jury.

### IV. Harmless Error

 When a jury instruction incorrectly states the law, we assume that the erroneous instruction influenced the verdict and will reverse unless the verdict would have been the same under a proper instruction. *Morgen v. Ford Motor Co.*, 797 N.E.2d 1146, 1156 (Ind.2003); *Wright*, 774 N.E.2d at 895 (citing *Canfield v. Sandock*, 563 N.E.2d 1279, 1282 (Ind.1990)). Ford contends that notwithstanding any error in giving this jury instruction, the Schultzes were not prejudiced when the trial court employed Instruction 23 because the rebuttable presumption would

have fallen simultaneously with the Schultzes' proof of negligence. We disagree.

Here, it is clear that Ford relied heavily on the jury's use of Instruction 23. During its closing remarks, Ford's counsel made the following comments about this erroneous instruction:

> In fact, the compliance with FMVSS 216 is important because as the instruction reads, you can then presume that Ford was not negligent in its design and that the vehicle was not defective.
>
> It would turn logic on its ears, in fact, to suggest otherwise, that somehow you can comply with a standard, make it as you are supposed to make a product per the standards, but yet the product be found defective.
>
> . . . .
>
> What's important about this ... is that Federal Motor Vehicle Safety Standard is an objective safety standards [sic] which meets the need for motor vehicle safety. The Federal Government is saying, Ford, you meet the need for motor vehicle safety by hitting the standard. Ford's done that and exceeded by 111 percent, because motor vehicle safety is something that protects against unreasonable risk of accidents or death in an accident ... or injury in an accident.

*Transcript* at 4589–91. Focusing on the testimony of one of the Schultzes' witnesses, Ford's attorney recounted:

---

8. Summary judgment is rarely appropriate in negligence cases. *Wilkerson v. Harvey*, 814 N.E.2d 686, 690 (Ind.Ct.App.2004). In Indiana, the party moving for summary judgment has the burden of establishing that no genuine issue of material fact exists. *Rogers*, 737 N.E.2d at 1167. Once the moving party has met this burden with a prima facie showing, the burden shifts to the non-moving party to establish that a genuine issue does in fact

exist. *Id.* Prior to the enactment of IC 34–20–5–1's presumption, there was no means by which a manufacturer could prove that it had met its standard of care to prove it was not negligent. This presumption permits a trial court to grant summary judgment to a manufacturer who might otherwise be unable to show the absence of a genuine issue of material fact.

And I asked him, "Would you agree with me that if Judge Johnson were to give instructions in the case, that that would be someone that would know Indiana law?" And he said, "Yes." And Judge Johnson has given you the Instruction No. 23, which is what our legislature has said, which is if you comply with what the Federal Government mandates for motor vehicle safety, that objective bar, us Hoosiers are going to say and presume that you are not negligent and the product is not defective.

*Id.* at 4591.

Ford's attorney later commented:

Well, our General Assembly has told us in the instruction that you've heard that if you comply with the FMVSS, that it's not defective. Right there plaintiffs failed to prove each of the elements.

What about failed to exercise reasonable care? Once again, a manufacturer is presumed not to be negligent if you meet the objective standard. That's what it's all about. Reasonable care is something that's measured by an objective standard. And if, in fact, as Mr. Kam acknowledged, that the Federal Motor Vehicle Safety Standards are an objective standard and one meets it, how is meeting that standard anything other than exercising reasonable care? That's Instruction 23.

*Id.* at 4592.

In its closing argument, Ford used Instruction 23 and compliance with FMVSS 216 as the "objective" standard to assert that Ford was not negligent and that the Explorer was not defective. Given the emphasis Ford placed on the importance of Instruction 23, and given our standard of review, we can assume that this erroneous instruction did, indeed, influence the jury's verdict. *Morgen,* 797 N.E.2d at 1156; *Wright,* 774 N.E.2d at 896; *Canfield,* 563 N.E.2d at 1282. The judgment of the trial court is reversed and this action is remanded for a new trial.

Reversed and remanded.

BARNES, J., and CRONE, J., concur.