**Catalina RODRIGUEZ, Appellant–Plaintiff,**

v.

**TECH CREDIT UNION CORP., Leroy Johnson, Eddie Veal, Tanya Burns, and Tony Rodriguez, Appellees–Defendants.**

No. 45A04–0409–CV–470.

Court of Appeals of Indiana.

March 29, 2005.

Nathaniel Ruff, Merrillville, IN, Attorney for Appellant.

Paul J. Peralta, D. Lucetta Pope, Baker & Daniels, South Bend, IN, Attorneys For Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Catalina Rodriguez (Rodriguez) appeals the trial court's grant of summary judgment in favor of appellees-defendants Tech Credit Union Corp. (Tech), Leroy Johnson, Eddie Veal, Tanya Burns, and Tony Rodriguez (collectively, "the Board Members") in her claim for breach of and tortious interference with an employment contract. Specifically, Rodri-

guez argues that the trial court improperly granted summary judgment to Tech because it was responsible for the alleged breach of her contract as the successor to LTV Steel Employees Federal Credit Union (LTV) and that summary judgment should not have been granted to the Board Members on the basis of statutory immunity. Finding that Tech could properly be sued as LTV's successor but that LTV and the Board Members acted within the business judgment rule, we affirm the judgment of the trial court.

### FACTS

Before it dissolved, LTV was an Indiana nonprofit corporation that operated a credit union in East Chicago. The members of the board of directors received no compensation for their services. On January 21, 2000, Rodriguez assumed the position of General Manager of LTV under the terms of a written employment contract. According to the terms of the contract, Rodriguez was to "perform the duties and responsibilities of General Manager of Credit Union, subject to the direction and policies of the Board of Directors of Credit Union." Board Members' App. p. 11. If Rodriguez failed to perform these duties or if she engaged in certain misconduct, the contract allowed LTV to terminate her employment. Specifically, paragraph 13.2.5 of the contract stated:

The material breach of this agreement, or negligent or willful misperformance by [Rodriguez] of [her] duties and obligations under the agreement, or dishonest, fraudulent or criminal acts of [Rodriguez], provided however, [LTV] shall be given prior written notice of the charges against [Rodriguez] and [Rodriguez] is given an opportunity to respond in person or in writing, at the option of [Rodriguez], to the charges before a fi-

nal decision is made to terminate this agreement.

Board Members' App. p. 38.

At the time that Rodriguez became general manager, LTV was operating under a Letter of Understanding with its regulating body, the National Credit Union Administration (NCUA), based on its poor management and financial condition. In August 2000, the NCUA notified Johnson, the president of LTV, that limited improvement had occurred in a few areas, but that "poor loan quality is adversely affecting your credit union. Loan policy and underwriting practice is poor, delinquent and loss loans are extremely high, collection efforts are ineffective, and the Provision for Loan Loss expense is causing an operating loss for this year." Board Members' App. p. 46.

In January 2002, the Board Members, who constituted the Executive Committee of the Board of Directors of LTV, determined that Rodriguez had breached her duties under the contract and prepared a memorandum notifying her of the charges against her. Specifically, the Board Members stated that:

1) Rodriguez recommended to the Directors at a March 28, 2001 meeting that LTV engage Airey Insurance and Financial Services, Inc. to broker the marketing and sale of variable annuity and life products without informing the board that she had signed a contract for those services on August 22, 2000, and that her son worked for Airey as a Sales Representative and would receive compensation for its new business.

2) On March 7, 2001, Rodriguez acted at the request of former LTV president Ed Stewart, despite the directive from the newly elected board that she not do so, and summoned security officers to remove board member Tanya Burns from the LTV premises, subsequently paying those security officers from LTV funds without authorization from the Board.

3) Rodriguez negligently extended loan repayment periods for various credit union members based on personal relationships to the detriment of LTV.

4) Rodriguez negligently or willfully failed to develop and implement policies to comply with the November 8, 2000 Letter of Understanding between LTV and the NCUA; and

5) Rodriguez generally failed to execute her duties as the General Manager.

After receiving this letter, Rodriguez requested that the Board convene a meeting on January 15, 2002, to allow her to respond to the charges. Although the Board did so, Rodriguez did not attend the meeting personally. Instead, she submitted a written response. LTV's Board reviewed the response and concluded that Rodriguez failed to adequately rebut the allegations against her because:

1) Rodriguez did not explain why she presented the Airey venture as a new contract in March 2002, and failed to disclose the relationship between Airey and her son to the new Board Members;

2) Witnesses contradicted Rodriguez's version of the incident involving efforts to remove Tanya Burns from the premises;

3) Rodriguez failed to explain her assent to loan extensions and her failure as a manager to prevent loan officers from making inadvisable loans;

4) Rodriguez had missed over one hundred days of work in 2001; and

5) Rodriguez had purchased 500 lapel pins on behalf of another institution with LTV funds.

In deciding whether to terminate Rodriguez's employment for cause, the Board Members further concluded that Rodri-

guez had failed to implement the directive of the Board that LTV perform its own collections work, that Rodriguez had used LTV funds to purchase shirts for its employees after the Board denied her request for funding, and that NCUA examiner Dale Turner had advised the Board to terminate Rodriguez's employment based on her actions regarding Airey. In an Executive Committee session, the Board Members voted to terminate Rodriguez's employment, and Johnson informed Rodriguez in writing on January 31, 2002, that her employment would end on February 1, 2002.

On April 27, 2002, Tech acquired LTV. The Agreement of Merger stated, "The *LTV Steel Employees Federal Credit Union* shall be merged into *TECH Credit Union* under the name and charter of *TECH Credit Union.*" Appellant's App. p. 143 (emphasis in original). The parties agreed that a bond of insurance would be purchased to cover any of LTV's liabilities; however, the Agreement itself was silent as to whether Tech acquired LTV's liabilities. LTV dissolved, and the credit union now does business as Tech.

On September 16, 2002, Rodriguez filed a complaint against Tech and the Board Members, alleging breach of and tortious interference with her employment contract. On October 2, 2003, the Board Members filed a motion for summary judgment, asserting that they acted within the scope of their authority and in the best interest of LTV. On the same day, Tech also filed a motion for summary judgment, alleging that it was neither a party to nor in privity with Rodriguez's employment contract and that Rodriguez had failed to name a necessary party, namely LTV. After a number of continuances, the trial court conducted a hearing on the summary judgment motions on June 29, 2004. On August 5, 2004, the trial court granted both motions for summary judgment, finding that Tech did not acquire the liabilities of LTV, nor did it become a successor to the employment contract, and that the Board Members were immune from civil liability as voluntary directors of a non-profit corporation because they exercised their business judgment in good faith. Rodriguez now appeals.

### DISCUSSION AND DECISION

Rodriguez argues that summary judgment was improper for both Tech and the Board Members. Specifically, she argues that Tech was responsible for LTV's alleged breach of her employment contract because it acquired LTV through a merger and that the Board Members were not entitled to statutory immunity.

The standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court. *Coca–Cola Co. v. Babyback's Int'l, Inc.*, 806 N.E.2d 37, 39 (Ind.Ct.App. 2004), *trans. denied.* Summary judgment is appropriate where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. We will construe all facts and reasonable inferences in a light most favorable to the nonmoving party. *Id.* The trial court's grant of summary judgment is cloaked with a presumption of validity. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind.1993). The party appealing from a summary judgment order has the burden of persuading us that the trial court's decision was erroneous. *Id.* We will affirm the trial court's grant of summary judgment on any theory or basis found in the record. *Brady v. Allstate Indem. Co.*, 788 N.E.2d 916, 919 (Ind.Ct.App.2003).

Rodriguez first contends that the trial court erred in granting summary judgment in favor of Tech based on her

argument that Tech is the successor in interest to LTV. Generally, only a party to the contract can be held liable· for its breach because contractual obligations are personal in nature. *DiMizio v. Romo,* 756 N.E.2d 1018, 1021–22 (Ind.Ct.App.2001), *trans. denied.* Nevertheless, following a merger, the surviving corporation succeeds to all the rights, powers, liabilities and obligations of the merging corporation. *Knightstown Lake Property Owners Assoc., Inc. v. Big Blue River Conservancy Dist.,* 178 Ind.App. 463, 472, 383 N.E.2d 361, 366 (1978). However, where one corporation purchases the assets of another, the buyer does not assume the debts and liabilities of the seller. *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1233 (Ind.1994). But there are exceptions to this rule. As our supreme court noted in *Winkler:*

> Generally recognized exceptions to this rule include (1) an implied or express agreement to assume the obligation; (2) a fraudulent sale of assets done for the purpose of escaping liability; (3) a purchase that is a de facto consolidation or merger; or (4) instances where the purchaser is a mere continuation of the seller.

*Id.* "Successor in assets liability, under these exceptions, takes place only when the predecessor corporation no longer exists, such as when a corporation dissolves or liquidates in bankruptcy." *Markham v. Prutsman Mirror Co.,* 565 N.E.2d 385, 387 (Ind.Ct.App.1991).

Rodriguez contends that Tech succeeded to LTV's liabilities because it acquired LTV through a merger, while Tech asserts that it merely purchased the assets of LTV, which would mean that Tech did not acquire LTV's liabilities. We find Tech's argument to be rather disingenuous, considering the document under which Tech acquired LTV is entitled, "Agree-ment of Merger." Appellant's App. p. 143. Moreover, the· Agreement repeatedly refers to the transaction as a merger. Thus, Tech, as the surviving corporation, succeeded to LTV's liabilities. Even if ·we were to find that Tech purchased LTV's assets, the transaction would fit under the exception to the rule that a buyer does not acquire the· liabilities of the seller because this would be a de facto merger, inasmuch as LTV, the predecessor corporation, no longer exists.

This does not end the question, inasmuch as we will affirm summary judgment on any theory supported by the record. *Brady,* 788 N.E.2d at 919. Therefore, we must determine if LTV would have been entitled to summary judgment. We do so by addressing the issue of whether the Board Members acted within the scope of their authority in terminating Rodriguez because if the Board Members, as agents of LTV, committed no wrongdoing, then LTV committed no wrongdoing.

The Nonprofit Corporations Act immunizes volunteer directors from civil liability for an action taken as a director, or for failure to take an action, unless they have not exercised their business judgment in good faith, with the care of an ordinarily prudent person, in a manner reasonably believed to be in the best interests of the corporation, and the breach or failure to perform constitutes willful misconduct or recklessness. Ind.Code § 23–17–13–1.

The record demonstrates that LTV was failing financially when Rodriguez became the general manager but that things did not improve on her watch. Questionable loans and extensions were made and collections efforts were ineffective. Board Members' App. p. 46. In addition, Rodriguez signed a contract with Airey, then presented it to the Board of Directors as a proposal rather than as an existing contract. *Id.* at 27. Although Rodriguez may

have informed the original Board of Directors of her son's employment with Airey, she did not give the new Board of Directors the same information after the election. *Id.* NCUA examiner Dale Turner had advised the Board to terminate Rodriguez's employment based on her actions regarding Airey. *Id.* at 4, 28. Furthermore, Rodriguez directly contravened orders of the Board that LTV perform its own collections work and that Rodriguez not use LTV funds to purchase shirts for its employees. *Id.* at 4, 27–28. The Board Members provided Rodriguez with notice of the charges against her and an opportunity to be heard, as was required by her employment contract, before terminating her employment. This evidence, when taken together, demonstrates that the Board Members exercised their business judgment in good faith and acted in the best interest of the corporation. Thus, the Board Members committed no wrongdoing and are immune from civil liability. As such, LTV committed no wrongdoing, and the trial court did not err in granting summary judgment in favor of both Tech and the Board Members.

The judgment of the trial court is affirmed.

SHARPNACK, J., and FRIEDLANDER, J., concur.