ATTORNEYS FOR APPELLANTS
Roger L. Pardieck
Seymour, Indiana

Bruce D. Aukerman
Terre Haute, Indiana

Craig R. McClellan
John H. Gomez
San Diego, California

ATTORNEYS FOR APPELLEE
Kevin C. Schiferl
Nelson D. Alexander
Julia Blackwell Gelinas
Robert B. Thornburg
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
Raymond L. Faust
Nelson A. Nettles
James D. Johnson
Defense Trial Counsel of Indiana

J. Joseph Tanner
M. Kristin Glazner
Thomas C. Kus
Indiana Manufacturers Association and
Alliance of Automobile Manufacturers, Inc.

Hugh F. Young, Jr.
L. Alan Whaley
Bonnie L. Gallivan
Myra C. Selby
Brian J. Paul
Product Liability Advisory Council, Inc.

J. Alexander Tanford
Pro se

David V. Scott
Indiana Trial Lawyers Association

# In the
# Indiana Supreme Court

No. 49S02-0508-CV-376

RICHARD SCHULTZ and
GAIL SCHULTZ,

*Appellants (Plaintiffs below)*,

v.

FORD MOTOR COMPANY,

*Appellee (Defendant below)*.

Appeal from the Marion Superior Court, No. 49D02-0002-CT-156
The Honorable Kenneth H. Johnson, Judge

_____

**December 5, 2006**

**Sullivan, Justice.**

A jury rendered a defense verdict on plaintiffs' product liability and negligence claims relating to the collapse of the roof of a Ford Explorer in a rollover accident. The Court of Appeals found the trial court's giving of a jury instruction on a presumption to have been reversible error. We hold that Indiana Evidence Rule 301, which authorizes presumptions to be given "continuing effect even though contrary evidence is received," operated to authorize the jury instruction given here.

**Background**

In December, 1997, Richard Schultz lost control of his 1995 Ford Explorer when it hit a patch of black ice on Indiana State Road 2. The Explorer slid off the road into a ditch, hit a sloped embankment, and rolled over, eventually coming to rest upright. Schultz was wearing his seatbelt, and experts testified that when the Explorer first left skid marks, it was traveling between 26 and 32 miles per hour.

During the accident, the roof on the Explorer collapsed on top of Schultz, snapping his neck and rendering him a quadriplegic. Schultz and Gail Schultz (the "Schultzes") sued Ford Motor Company, alleging defective roof design and negligence and seeking compensatory and punitive damages.

The jury returned a verdict in favor of Ford.

The Court of Appeals reversed and remanded for a new trial. Schultz v. Ford Motor Co., 822 N.E.2d 645 (Ind. Ct. App. 2005). It found that the trial court had committed reversible error when it gave the jury the following instruction:

Ford Motor Company has alleged that the Plaintiffs' 1995 Ford Explorer complied with the Federal Motor Vehicle Safety Standard 216.[1] Ford Motor Company has the burden of proving this allegation.

If you find Ford Motor Company has proved by a preponderance of the evidence that before the 1995 Ford Explorer was sold by Ford Motor Company that it complied with Federal Motor Vehicle Standard 216 then you may presume that Ford Motor Company was not negligent in its design of the 1995 Ford Explorer and that the 1995 Ford Explorer was not defective.

However, the Plaintiffs may rebut this presumption if they introduced evidence tending to show that the 1995 Ford Explorer was defective.

Appellants' App. at 54.[2]

We granted transfer. Schultz v. Ford Motor Co., 841 N.E.2d 182 (Ind. 2005) (table).

**Discussion**

**I**

**A**

Effective January 1, 1994, this Court adopted Rules of Evidence to govern proceedings in Indiana courts. We first appointed a Rules of Evidence Drafting Committee, which proposed a draft of the Rules. After a public comment period, we promulgated a final version of the Rules.

---

[1] Federal Motor Vehicle Safety Standard ("FMVSS") 216 is a federal government standard specifying minimum strength requirements for passenger compartment roofs. The purpose of the standard is to reduce deaths and injuries that result from roofs collapsing into passenger compartments during rollover accidents. The standard requires that a vehicle's roof not move more than 127 millimeters when a force equal to 1.5 times the unloaded vehicle weight is applied to the roof. Appellants' App. at 55 (quoting 49 C.F.R. § 571.216 (1997)).

[2] This instruction, with appropriate modifications for the facts of this case, is Indiana Civil Pattern Jury Instruction 7.05(D). Indiana Pattern Jury Instructions are prepared by the Criminal and Civil Instruction Committees of the Indiana Judicial Conference and published by the Indiana Judges Association. Although we have not formally approved them for use, we have recognized their existence and given them some preferential status. See Ind. Trial Rule 51(E) (relieving parties in litigation of certain requirements applicable to proposed jury instructions when they are Indiana Pattern Jury Instructions); see also Winegeart v. State, 665 N.E.2d 893, 901 n.1 (Ind. 1996).

3

In doing so, we made a number of changes from the draft. One rule that we changed from the draft is Indiana Evidence Rule 301, which, as adopted, provides:

> In all civil actions and proceedings not otherwise provided for by constitution, statute, judicial decision or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. A presumption shall have continuing effect even though contrary evidence is received.

The change was the addition of a second sentence: "A presumption shall have continuing effect even though contrary evidence is received." The rule proposed by our Drafting Committee consisted only of the first sentence, language that was consistent with prior Indiana law. Presumptions were now to have "continuing effect." Although commentators at the time viewed the addition of this sentence as a significant change, neither this Court nor the Court of Appeals has been called upon to apply it in the intervening 12 years. See Ivan E. Bodensteiner, Indiana Rules of Evidence, 27 Ind. L. Rev. 1063, 1069 (1994).

In the year following that in which our Evidence Rules took effect, the Legislature amended the Indiana Product Liability Act (the "Act"), now codified at Indiana Code sections 34-20-1-1 to -9-1,[3] to provide:

> In a product liability action, there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product . . . complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana.

Ind. Code § 34-20-5-1 (1998).

---

[3] The Legislature enacted the Act as Indiana Code sections 33-1-1.5-1 to -8 in 1978. Substantive amendments were made to the Act most recently in 1995. As part of its ongoing recodification project applicable to the entire Indiana Code, the Legislature recodified the Act to its present location, effective July 1, 1998. For a discussion of the effect of such recodifications generally, see State v. Wilson, 836 N.E.2d 407, 411-14 (Ind. 2005).

The claims brought by the Schultzes against Ford in this case – defective design of the roof of the Explorer and negligence – are governed by the Act.[4] The disputed instruction advised the jury of the "rebuttable presumption" articulated in Indiana Code section 34-20-5-1. And so our decision as to whether the disputed instruction was properly given turns on the interrelationship of this statute that recognizes a "rebuttable presumption" with Indiana Evidence Rule 301 that gives presumptions "continuing effect."

**B**

The Schultzes argue on appeal that it was improper for the trial court to instruct the jury on Indiana Code section 34-20-5-1 because the statute "is a presumption that imposes a burden of production – not proof – and hence, is an improper subject of jury instruction altogether." Appellants' Br. at 11.

Ford's response is that the presumption created by the Legislature here is not a rule of law that shifts the burden of proof from the party that has it to the one that does not. Rather, "because I.C. § 34-20-5-1(2) lacks any procedural consequences, it is more accurately viewed as an inference rather than a true presumption." Pet. for Trans. at 6 (citations omitted). And it was proper, Ford argues, for the trial court to instruct the jury on what Ford deems a statutorily-recognized inference:

> While not conclusive, compliance with Federal Motor Vehicle Safety Standards is highly probative of whether a manufacturer has exercised reasonable care and whether the vehicle possesses a defect. Ford repeatedly submitted evidence of the Explorer's compliance with FMVSS 216, the applicable federal roof strength standard. It was entitled to the instruction on I.C. 34-20-5-1(2).

Id. at 8 (footnote omitted).

---

[4] See Indiana Code section 34-20-1-1, the Act governs and controls all actions brought by users or consumers against manufacturers or sellers for physical harm caused by a product, "regardless of the substantive legal theory or theories upon which the action is brought."

The Schultzes vigorously oppose the notion that the statute creates an inference. "Given the Legislature's use of the term 'rebuttable presumption' its plain, ordinary and usual meaning leads to the conclusion that it intended the Rebuttable Presumption Statute to be a 'presumption' – not simply an 'evidentiary inference.' . . . [The statute] does not suggest that the presumption plays any part in a jury trial and nowhere uses the words 'evidence' or 'inference.'" Br. in Resp. to Pet. to Trans. at 8-9.

The Court of Appeals adopted the Schultzes' analysis, and held that when the opponent of the presumption has met the burden of production, the purpose of the presumption has been fulfilled and the presumption should be dropped from the case. Schultz, 822 N.E.2d at 654 (quoting McClain v. Chem-Lube Corp., 759 N.E.2d 1096 (Ind. Ct. App. 2001), trans. denied, 774 N.E.2d 514 (Ind. 2002) (table)). It held that the instruction, by using the language "may presume," created "a permissive inference" for the jury about the evidence in the case. Id. at 654 n.7. However, the court said, this was an incorrect statement of law because the plain language of the statute created "a mandatory presumption of substantive law." Id. at 655. "The rebuttable presumption of IC 34-20-5-1 is not evidence; instead, it should be used as guidance for the court and not as evidence for the jury." Id.

**C**

We find both of these to be respectable arguments. But we think the answer is dictated by Indiana Evidence Rule 301.

As alluded to supra, prior to the adoption of the Rules of Evidence, the law of Indiana had been that:

> [A] presumption is not evidence and is not to be weighed by the trier of fact as though it had evidentiary value. When the party against whom the presumption operates introduces evidence that disputes the presumed fact, the presumption ceases to operate, disappears from the case, and no longer remains to assist any party.

12 Robert Lowell Miller, <u>Indiana Practice</u> § 301.102 at 188-89 (2d ed. 1995) ("Miller") (citing cases).

This approach to presumptions has a century-old provenance in the work of Professor James Bradley Thayer, who taught evidence at Harvard in the late 19th century. 1 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Federal Evidence</u> § 301App.100[2][a] at 301App.-13 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997) ("Weinstein") (citing Thayer, <u>A Preliminary Treatise on Evidence at the Common Law</u> 337 (1898) ("Thayer")); 2 Kenneth S. Broun et al., <u>McCormick on Evidence</u> § 344 at 508 & n.7 (6th ed. 2006) ("McCormick") (citing Thayer). Thayer's theory is popularly referred to as the "bursting bubble" theory because its sole effect is to force the opponent of the presumption to rebut it by producing enough evidence to avoid a directed verdict. It does not, in other words, shift the burden of persuasion, only the burden of production. Weinstein § 301.App.100[2][a] at 301App.-13; McCormick § 344 at 508; Miller § 301.102 at 186 & n.6 (citing authorities including Thayer & McCormick).

A different approach was taken a generation later by another Harvard professor, Edmund Morgan. Weinstein § 301App.100[2][b] at 301App.-15; McCormick § 344 at 517. Under his view, a presumption should shift not only the burden of producing evidence, but also the burden of persuasion. Weinstein § 301App.100[2][b] at 301App.-15. That is, the finder of fact would be required to find the presumed fact once the basic fact is established, unless the opponent of the presumption persuaded the factfinder of the nonexistence of the presumed fact. <u>Id.</u>

Both rules, it has been noted, have in common giving the benefit of a "presumed fact" to a party who triggers a presumption by proving a "basic fact."[5] In this respect, both approaches impose the same burden on the opponent to come forward with some evidence, or the presumption governs. American Bar Association, <u>Emerging Problems Under the Federal Rules of Evidence</u> 33 (West 2d ed. 1991). The difference is in the rules' operation following the introduction of rebuttal evidence. Under Thayer's approach, once rebuttal evidence is produced by the opponent of the presumption, the presumption disappears and the case proceeds on the basis of evi-

---

[5] A "basic fact" in this context is also sometimes referred to as a "predicate fact" or a "subsidiary fact."

7

dence actually produced.[6] Id. But under Morgan's approach, the presumption shifts to the opponent of the presumption the burden of disproving the presumed fact. Id. at 34.

Over time, both positions have attracted support. Wigmore is said to have sanctioned Thayer's bursting bubble theory, the Model Code of Evidence to have adopted it, and Federal Rule of Evidence 301 to embody it. McCormick § 344 at 508 & nn.8-10. Professor Morgan's burden-of-persuasion-shifting theory is said to have been endorsed by McCormick, included in the Uniform Rules of Evidence, and recommended by the Advisory Committee on the original Federal Rules of Evidence (though rejected by Congress in favor of the Thayer rule). McCormick § 344 at 517; Weinstein § 301App.100[2][b] at 301App.-15 & n.8.

The rationale, it should be apparent, for choosing between Thayer's and Morgan's approaches will depend on one's view of how strong a role a presumption should play in dictating the course of litigation. Thayer's view gives presumptions relatively light weight; Morgan's heavy.[7] Of course, one's view of whether presumptions should be given relatively light or relatively heavy weight will depend in turn on one's view of the significance of the policies giving rise to presumptions in the first place. Judge Miller makes this point as follows:

---

[6] There are several poetic expressions of this point: "Presumptions . . . may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts," Mackowik v. Kansas City, 94 S.W. 256, 262 (Mo. 1906) (quoted in McCormick § 344 at 508); and "[P]resumptions . . . abide until facts proved to the contrary make them take flight," Hitt v. Carr, 77 Ind. App. 488, 130 N.E. 1, 8 (1921) (quoted in Miller § 301.102 at 186).

[7] This distinction was captured by the Committee on the Judiciary of the U.S. House of Representatives when it was considering the proposed Federal Rules in 1973:

> With respect to the weight to be given a presumption in a civil case, the [House Judiciary] Committee agreed with the judgment implicit in the [Supreme] Court's version that the so-called "bursting bubble" theory of presumptions, whereby a presumption vanishes upon the appearance of any contradicting evidence by the other party, gives to presumptions too slight an effect. On the other hand, the Committee believed that the Rule proposed by the Court, whereby a presumption permanently alters the burden of persuasion, no matter how much contradicting evidence is introduced . . . lends too great a force to presumptions.

H.R. Rep. No. 93-650, at 7 (1973), reprinted in 1974 U.S.C.C.A.N. 7075, 7080-81 (quoted in Weinstein § 301App.01[3] at 301App.-5).

The strongest criticism against the "bursting bubble" theory of presumptions is that it affords too little protection to the policies that give rise to presumptions. A presumption may have been created, for example, because the party it favors otherwise would be handicapped by lack of access to proof, or because the law favors a particular result. If the mere production of contrary evidence removes the presumption from the case entirely, the jury never will learn of the policies behind the presumption.

Miller § 301.102 at 189-90.[8]

Adding particular complexity to the subject is the obvious fact that policies of differing significance give rise to different presumptions. The original Uniform Rules of Evidence, for example, made a distinction between presumptions that were based on probability and presumptions that were based on social policy. McCormick § 344 at 517. But making such distinctions requires a hybrid approach somewhere between Thayer and Morgan, thereby eliminating one great advantage that both have in common: simplicity in their application.

Returning to our Indiana Evidence Rule 301, the first sentence clearly adopts the Thayer approach of allocating only the burden of production, not burden of persuasion, "which remains throughout the trial upon the party on whom it was originally cast." But Rule 301 clearly rejected a pure Thayer "bursting bubble" approach and changed prior Indiana law when we added the new second sentence: "A presumption shall have continuing effect even though contrary evidence is received."

---

[8] To the same effect, see McCormick §344 at 509 (footnotes omitted):

> The "bursting bubble" theory has been criticized as giving to presumptions an effect that is too "slight and evanescent" when viewed in the light of the reasons for the creation of the rules. Presumptions . . . have been created for policy reasons that are similar to and may be just as strong as those that govern the allocation of the burdens of proof prior to the introduction of evidence. These policy considerations may persist despite the existence of proof rebutting the presumed fact. They may be completely frustrated by the Thayer rule when the basic facts of the presumption do not give rise to an inference that is naturally sufficient to take the case to the jury. Similarly, even if the natural inference is sufficient to present a jury question, it may be so weak that the jury is unlikely to consider it in its decision unless specifically told to do so. If the policy behind certain presumptions is not to be thwarted, some instruction to the jury may be needed despite any theoretical prohibition against a charge of this kind.

As discussed <u>supra</u> (in the quotes from Judge Miller in the text accompanying footnote 8 and McCormick in footnote 8), the problem with the Thayer "bursting bubble" rule is that it can operate to prevent juries from effectuating the policies that gave rise to the presumption.[9]  It is to overcome this problem that this Court modified the Thayer rule by adding the new "continuing effect" language when we adopted Indiana Evidence Rule 301.[10]  Judge Miller has well captured the intent of this Court:

> Because the rule's second sentence appears to be a response to the commentators' concern that the "bursting bubble" approach too often prevents juries from effectuating the policies that gave rise to the presumption, it seems most likely that the rule's second sentence is intended primarily to affect the instructions given to the jury.

Miller § 301.102 at 190.[11]

---

[9] We note with interest that even under the "bursting bubble" approach of the Federal Rules of Evidence, courts may comment on permissible inferences:

> Because under [Federal Evidence] Rule 301, the presumption disappears from the case on presentation of evidence sufficient to rebut, there is no need to mention the word "presumption."  Moreover, because the jury may mistakenly attribute effects to the term other than those described by the judge and prescribed by the rule, the judge should avoid the word. . . . The jury simply will weigh the evidence.  Furthermore, the judge is free to exercise his or her common-law discretion to comment on the evidence, including discussing with the jury the probative force, or the normal inferential value, of the basic fact, to assist the jury in deciding whether it is persuaded of the existence of the presumed fact.

Weinstein § 301.04 at 301-23 (footnotes omitted).

[10] After our Drafting Committee submitted its recommendation (which, as discussed <u>supra</u> consisted of only the first sentence of the Rule as finally adopted), we received comments from a number of individuals and entities.  The Indiana Trial Lawyers Association ("ITLA") recommended adding a second sentence to Rule 301, to read: "A presumption shall have a continuing effect even though contrary evidence is received."  ITLA's rationale for this change was: "Rule 301 as presently proposed should be interpreted as following the 'bursting bubble' rule as to presumptions, <u>i.e.</u> that once any evidence has been produced contrary to the presumption, the presumption completely disappears.  This rule allows the opponent to destroy the effect of the presumption by offering any evidence, even though the evidence is dubious and minimal.  The better rule is to allow the presumption to be considered along with the opposing evidence."  This Court adopted the ITLA recommendation.

[11] Judge Miller continues, in language with which we agree:

> Earlier Indiana law suggests caution in instructing juries with respect to presumptions. . . . Because presumptions are not evidence and are not to be weighed as evidence,

10

We hold that a presumption is properly given "continuing effect" under the last sentence of Indiana Evidence Rule 301 by the trial court instructing the jury that when a basic fact is proven, the jury may infer the existence of a presumed fact. Accord Flis v. Kia Motors Corp., No. 1:03CV1567-JDT-TAB, 2005 WL 1528227 (S.D. Ind. June 20, 2005) (holding the "continuing effect" language of Indiana Evidence Rule 301 authorizes a jury instruction on Indiana Code section 34-20-5-1).

## D

As a general matter, then, Indiana Evidence Rule 301 authorizes a court to instruct the jury on permissible inferences that may be drawn from the basic facts that give rise to presumptions, notwithstanding the traditional prohibition on instructing juries about presumptions. But several questions remain to be answered before we are able to conclude that there was no reversible error in giving the instruction disputed in this case.

First, the Schultzes maintain and Ford acknowledges that the presumption recognized in the statute is not a conventional presumption at all. A presumption, as discussed at length in this opinion, relieves the party with the burden of proof on a presumed fact from having to produce evidence of the presumed fact once that party has proved a basic fact. Unless the opponent of the presumption presents evidence tending to disprove the presumed fact, the party in whose favor the presumption operates is entitled to judgment on that issue. But under the statutory presumption at issue here, the presumed fact is the presence or absence of defect and negligence. And the plaintiffs (the Schultzes), not the defendant (Ford), have the burden to prove defect and negligence in a product liability action.

---

earlier Indiana law deemed it error to instruct a jury that the law presumes a fact. . . . [But e]ven before the adoption of Rule 301, Indiana law held that a court may instruct the jury on permissible inferences: that if fact A is proven, fact B may be inferred from it, even when an instruction that the law "presumes" fact B would be error. Such an instruction is allowed even if improper use of the term "presumption" is made, as long as it is clear that an inference is described, though the court may not state the weight to be ascribed to the inference. A similar approach with respect to presumptions appears warranted in light of the second sentence of Rule 301.

Miller § 301.102 at 190-92 (footnotes omitted).

11

The Schultzes explain this anomaly by arguing that the statute should be seen as operating only at summary judgment where the "presumption" serves to impose upon plaintiffs the obligation to come forward with evidence that it would not otherwise be required to produce.[12] Appellants' Br. at 11 (quoting J. Alexander Tanford, Indiana Trial Evidence Manual, § 7.03 (4th ed. 1998) ("Tanford")); Br. of Amicus Curiae J. Alexander Tanford at 3.[13] Is another implication of this anomaly that, except at the summary judgment stage, there simply is no presumption to be given continuing effect under Indiana Evidence Rule 301? We think not. The point of giving "continuing effect" to a presumption through a jury instruction is to further the policies that give rise to the presumption in the first place. By authorizing the instruction here, we recognize the policy embodied by the Legislature in Indiana Code section 34-20-5-1, regardless of whether the provision conforms to the conventional definition of a legal "presumption."

Second, Indiana Evidence Rule 301 carves out from its application "civil actions and proceedings not otherwise provided for by constitution, statute, judicial decision or by these rules." The Schultzes argue that several decisions of the Court of Appeals provide the procedural rules applicable to the statutory presumption such that Indiana Evidence Rule 301 does not apply. Appellants' Br. at 12-13 (quoting Tanford). The cases they cite are Rogers v. Cosco, Inc., 737 N.E.2d 1158 (Ind. Ct. App. 2000), trans. denied, 761 N.E.2d 419 (Ind. 2001) (table); McClain v. Chem-Lube Corp., 759 N.E.2d 1096 (Ind. Ct. App. 2001), trans. denied, 774 N.E.2d 514 (Ind. 2002) (table); and Cansler v. Mills, 765 N.E.2d 698 (Ind. Ct. App. 2002), trans. denied, 783 N.E.2d 695 (Ind. 2002) (table). Appellants' Reply Br. at 12. The "judicial decision" exception in Rule 301 does not authorize a court to make an evidentiary rule contrary to the Rule. In any event, these cases do not address whether it is improper to give a jury instruction regarding the statutory presumption after that presumption is rebutted. Each dealt instead with whether the plaintiff at the summary judgment stage designated evidence to rebut the statutory presumption found in Indiana Code section 34-20-5-1. See Rogers, 737 N.E.2d at 1166; McClain, 759 N.E.2d

---

[12] For a discussion of the burden of proof at summary judgment in a design defect claim, see Joseph R. Alberts et al., Survey of Recent Developments in Indiana Product Liability Law, 39 Ind. L. Rev. 1145, 1158-60 (2006).

[13] Professor J. Alexander Tanford filed an Amicus Curiae brief pro se in this matter. He subsequently argued before our Court aligned with the Schultzes.

at 1101-03; <u>Cansler</u>, 765 N.E.2d at 707.  To the extent that <u>Rogers</u>, <u>McClain</u>, and <u>Cansler</u> may be read to hold that it is improper to give a jury instruction regarding the statutory presumption after that presumption is rebutted, they are disapproved.[14]

Third, even though the "continuing effect" language of Rule 301 authorizes giving a jury instruction on permissible inferences that may be drawn from the basic facts that give rise to presumptions, commentators cited in this opinion express reservations about the prejudicial effect that the use of the word "presumption" can have on juries.  "The jury, unless a further explanation is made, may suppose that the presumption is a conclusive one, especially if the judge uses the expression, 'the law presumes.'"  McCormick § 344 at 513.  "Most commentators, although espousing different theories on the effect a presumption should be given, agree that presumptions should not be mentioned to the jury."  Weinstein at § 301.04 at 301-22 (footnotes omitted).  "The leading commentators agree that jurors should not be told what the law presumes, because they will not understand that this is merely a procedural device related to the burden of proof."  Br. of Amicus Curiae J. Alexander Tanford at 9 (footnote omitted).

We acknowledge that the instruction given here uses the verb "presume" and the noun "presumption" but do not find their inclusion in the instruction sufficient to render its having been given reversible error.

Viewed as a linguistic matter, the verb "presume" is not used in a legal or technical sense; there is no language to the effect that "the law presumes . . . ."  Because of this, we think a typical juror would find it to have been synonymous with "infer" or, perhaps, "assume," the word Weinstein suggests be used in such circumstances.  <u>See</u> Weinstein § 301.04 at 301-24 (hypothetical proper instruction that does not mention "presumption" but uses the verb "assume").  The noun "presumption" follows the verb "presume" somewhat later in the instruction and because of this, we think a typical juror would not think of it as a legal or technical term but simply

---

[14] The Schultzes also rely on the statement of the Court of Appeals in <u>McClain</u> that "[i]f the opponent produces evidence that rebuts the presumption, [the presumption] serves no further purpose."  <u>McClain</u>, 759 N.E.2d at 1101.  To support that proposition, the court in <u>McClain</u> cited <u>Sumpter v. State</u>, 261 Ind. 471, 306 N.E.2d 95 (1974).  <u>Sumpter</u>, however, is inapplicable here as it was decided in 1974, long before the current Indiana Evidence Rule 301 was adopted effective January 1, 1994.

13

a reference to the earlier-mentioned act of presuming (or inferring or assuming). Although it might have been better if the instruction had used words like "infer" or "assume," the use of "presume" and "presumption" did not constitute reversible error.

Viewed as a substantive matter, we find the instruction to have been balanced, i.e., fair to both sides. To be sure, it told the jury that it could find Ford not to have been negligent in its design of the 1995 Ford Explorer and that the Ford Explorer was not defective if it found that Ford had proved its compliance with FMVSS 216. This undoubtedly benefited Ford. But the instruction went on to conclude by telling the jury that it could find this proposition to be rebutted so long as the Schultzes "introduced evidence tending to show that the 1995 Ford Explorer was defective." We believe this language was of comparable benefit to the Schultzes. So phrased, the instruction gave continuing effect to the statutory presumption in Indiana Code section 34-20-5-1 and did not unfairly prejudice the Schultzes.

## II

The Schultzes point out that the National Traffic and Motor Vehicle Safety Act ("Federal Safety Act") provides that "compliance with a motor vehicle safety standard . . . does not exempt a person from liability at common law." 49 U.S.C. § 30103(e) (2000). They argue that giving continuing effect to the rebuttable presumption in Indiana Code section 34-20-5-1 "allow[s] manufacturers to effectively immunize themselves from liability upon a showing that their products comply with FMVSS minimum standards . . . ." Appellants' Br. at 24. This, they maintain, conflicts with what they deem to be the Federal Safety Act's imposition of common law liability on manufacturers and so violates the Supremacy Clause's prohibition on state courts applying a federal standard contrary to federal law. Id. at 15-16 (citing U.S. Const. art. VI, § 2).

We do not find the Supremacy Clause implicated here. The heart of the Schultzes' Supremacy Clause argument is that the Federal Safety Act, by operation of 49 U.S.C. § 30103(e) (the "compliance . . . does not exempt a person from liability at common law" clause), subjects manufacturers to liability at common law in a way that cannot be modified by state legislatures

14

or state judicial decisions. We reject this construction on what we view as a simple saving clause in the federal statute.

While the Schultzes cite a number of cases for the proposition that states may not act in contravention of federal law, they cite none for the proposition that the saving clause in the Federal Safety Act in any way restricts the ability of states to assign a particular effect or value to comply with federal motor vehicle safety standards. Ford analyzes this issue as follows:

> When it enacted the [Federal] Safety Act and envisioned future federal motor vehicle safety standards, Congress made clear that it was not creating a federal defense to state common law tort actions. Congress did not want its actions – the creation of a federal regulatory body and federal safety standards – viewed as altering existing common law rules. The saving clause, thus, saves those common law actions from the potential preemptive effect of the [Federal] Safety Act's preemption clause: "Without the saving clause, a broad reading of the express preemption provision arguably might preempt those actions, for . . . it is possible to read the preemption provision, standing alone, as applying to standards imposed in common law tort actions, as well as standards contained in state legislation or regulation." Geier [v. American Honda Motor Co.], 120 S.Ct. [1913,] 1918 [(2000)]. But, the saving clause does not go further; it does not express any congressional intent to restrict a state legislature or state court from prescribing a particular effect or value to compliance with federal motor vehicle safety standards.

> In our federal system, the States are independent sovereigns with "historic primacy" in "regulation of matters of health and safety." Medtronic, Inc. [v. Lohr], 116 S.Ct. [2240,] 2250 [(1996)]. In such a system, the federal congress's expression that its action should not be interpreted as affording a particular outcome is a distinctly different inquiry from whether Congress intends to prohibit the states' governments from taking the same or similar action. Specifically, Congress's expression that its provision for federal motor vehicle safety standards did not create a federal defense to state common law tort actions is a fundamentally distinct notion from whether Congress also sought to prohibit state legislatures or courts from altering their common law to reflect that compliance with federal safety standards was a defense, or of some other value, as a matter of state law. The Safety Act's saving clause expresses no opinion on what effect, if any, a state may choose or not choose to ascribe, as a matter of state law, to a manufacturer's compliance with federal motor vehicle safety standards. While the saving clause is a clear expression that Congress did not intend to create a federal defense, it does not restrict a state sovereign from altering its common law to place some particular value upon compliance with federal safety standards.

15

Appellee's Br. at 27-28. We think this analysis is correct. We find nothing in the Federal Safety Act's saving clause that conflicts with Indiana Code section 34-20-5-1 or with its application in this case.

The Schultzes go on to make a similar argument to the effect that application of Indiana Code section 34-20-5-1 violates the preemption clause of the Federal Safety Act.[15] For these purposes, preemption occurs when a state explicitly or implicitly imposes a motor vehicle safety standard where the standard is not identical to the standard prescribed under the Federal Safety Act applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment. We do not find that Indiana Code section 34-20-5-1 explicitly or implicitly imposes any motor vehicle safety standard within the meaning of the Federal Safety Act and so do not find the preemption clause of that act implicated.

## Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

---

[15] The relevant portion of the Federal Safety Act dealing with preemption provides:

> (b) Preemption.
> (1) When a motor vehicle safety standard is in effect under this chapter [49 U.S.C. §§ 30101 et seq.], a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter [49 U.S.C. §§ 30101 et seq.]. However, the United States Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter [49 U.S.C. §§ 30101 et seq.].
> (2) A State may enforce a standard that is identical to a standard prescribed under this chapter [49 U.S.C. §§ 30101 et seq.].

49 U.S.C. § 30103(b).