**Alicia BONILLA, Appellant–Defendant,**

v.

**COMMERCIAL SERVICES OF PERRY, INC., as successor in interest to the Federal Deposit Insurance Corporation, which was the successor in interest to Industrial National Bank on all mortgages herein, Appellee–Plaintiff,**

**and**

**All of the unknown parties having an interest in the Estate of Ceasario Bonilla a/k/a Cesario Bonilla, et al., Appellees–Defendants.**

No. 45A03–0803–CV–105.

Court of Appeals of Indiana.

Jan. 27, 2009.

Kenneth M. Wilk, Highland, IN, Attorney for Appellant.

Thomas K. Parry, Crown Point, IN, Attorney for Appellee Commercial Services of Perry, Inc.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Alicia Bonilla (Alicia) appeals the trial court's judgment in favor of appellee-plaintiff Commercial Services of Perry, Inc. ("Perry"), as successor in interest to the Federal Deposit Insurance Corporation, which was the successor in interest to Industrial National Bank. Alicia raises a number of arguments, which we restate as follows: (1) the trial court's judgment that Alicia is liable for the mortgages in question is clearly erroneous, and (2) the trial court's order of damages pursuant to the promissory notes is clearly erroneous. Finding no error, we affirm.

## FACTS

There was a prior appeal in this matter. The relevant facts, as stated in the first appeal, follow:

This action involves a parcel of real estate located at 4310 Parrish Avenue in East Chicago, Indiana. . . .

Ceasario [Bonilla] owned a gasoline service station and was chairman and CEO of Industrial National Bank ("Industrial"). On March 16, 1984, Ceasario secured a $60,500 mortgage from Industrial on the property located at 4310 Parrish Avenue. The mortgage document includes Bonilla's name as co-mortgagor and bears the signatures of Ceasario and "Alicia Bonilla." Appellant's App. pp. 85–90. On April 20, 1985, Ceasario secured another mortgage from Industrial National Bank on the same property, in the amount of $82,000. Similarly, the mortgage document includes Bonilla's name as co-mortgagor and bears the signatures of both Ceasario and "Alicia Bonilla." Appellant's App. pp. 93–98. Ceasario died on November 26, 1991. Appellant's App. p. 79.

The Federal Deposit Insurance Corporation ("FDIC") was the successor in interest to Industrial, and Perry is the current successor in interest to FDIC regarding the two mortgages secured on 4310 Parrish Avenue. Appellant's App. p. 102. The debt remains unpaid. Appellant's App. p. 78. On March 31, 2000, Perry filed a "Complaint for Foreclosure of Real Estate Mortgages and Money Judgement [sic]." Appellant's App. pp. 77–83. It includes the following:

> That the terms and conditions of said note and mortgage have been violated and a default has occurred in that no payments have been made on said Note and Mortgage for a period in excess of 60 days; and therefore, there is currently due and owing upon said Note and Mortgage the Principal Sum above stated plus interest at the rate above stated calculated to the present date plus attorney fees and court costs as well as reasonable expenses associated with the collection of this debt. All of which is currently due and owing to the Plaintiff.
>
> That it is believed that the Defendant, Ceasario Bonilla, a/k/a Cesario Bonilla, died subsequent to the execution of the documents herein and on or about the 26th day of November, 1991; however, to date, the Official Records of both the Recorder and the Auditor of Lake County, Indiana indicate that said property remains titled in the name of Ceasario Bonilla a/k/a Cesario Bonilla and Alicia Bonnilla [sic], husband and wife, and the Official Records of the Lake Circuit Court do not indicate that an estate was ever opened herein.

Appellant's App. pp. 78–79.

A bench trial occurred on July 21, 2005. At that time, [Alicia] filed a motion for judgment on the evidence and/or for dismissal of Perry's complaint. Appellant's App. p. 4. On August 4, 2005, the trial court generally granted [Alicia]'s motion for judgment on the evidence, concluding that Perry "failed to introduce sufficient evidence to meet its burden of proof." Appellant's App. p. 26. On August 14, 2005, Perry filed a motion to correct errors. On October 13, 2005, the trial court denied Perry's motion . . . .

*Comm'l Servs. of Perry, Inc. v. Bonilla*, 45A03–0511–CV–536, slip op. at 2–4, 854 N.E.2d 87 (Ind.Ct.App. Sept. 6, 2006).

On appeal, Perry argued, in part, that the trial court erred as a matter of law when it granted Alicia's motion for judgment on the evidence regarding the need to introduce the actual promissory notes underlying the mortgages. *Id.* at 5. We held that, pursuant to *Yanoff v. Muncy*, 688 N.E.2d 1259 (Ind.1997), and Ind.Code section 26–1–3.1–309, Perry was not required to present the promissory notes underlying the debts in question in order to proceed with its case. *Id.* at 6. Consequently, we reversed and remanded for a new trial. *Id.*

Alicia has at all times denied that she signed either of the two mortgages in question. On remand, the trial court held a new bench trial on September 7, 2007. By stipulation, the parties agreed to "submit this matter for Judgement [sic] based solely upon the Evidence previously admitted herein as set forth in the previous Record of the Proceedings" and "potentially" would submit exemplars of Alicia's handwriting. Appellant's App. p. 271. The parties submitted the transcript and exhibits from the first trial as an exhibit. Alicia also submitted documents as exemplars of her handwriting, which the trial court admitted over Perry's objection.

On October 31, 2007, the trial court entered final judgment in Perry's favor, finding, among other things, as follows:

8.) The handwriting exemplars ... clearly show a distinct difference between the signatures of [Alicia] in the exemplars and the purported signature of [Alicia] on the mortgages.

* * *

11.) That the terms and conditions of said debts and mortgages had been violated and a default had occurred in that no payments have *ever* been made on said debts and Mortgages (a period in excess of 60 days); and therefore, there was currently due and owing upon said debts and Mortgages in the amounts as set forth in the Complaint herein.

* * *

13.) That, upon their faces, it is clear that the Mortgages were executed upon two different occasions separated by over a year and notarized by two (2) different Notaries Public.

* * *

17.) That, additionally, the Court now finds that, by [Alicia's] own repeated admissions, she knew of the debts and the mortgages and her husband's unsuccessful attempts to settle the debts prior to his death; however, she made no effort during any of the intervening 20 years to either "set aside" the mortgages or in any way "quiet title" to the property in question or return any of the funds associated with the Mortgages herein.

18.) That, further, the Court now finds that [Alicia] admitted that she benefitted from the funds received from the loans associated with the Mortgages herein.

* * *

CONCLUSIONS OF LAW

* * *

7.) That, from the Notarized Documents ..., which were admitted into evidence herein, it is presumed that [Alicia and Ceasario] were both signators and obligors on the Real Estate Mortgages in question under Indiana Law; and therefore, any effort to rebut that presumption as to authenticity must meet the requirements of Law regarding Affirmative Defenses.

8.) That neither [Perry] nor [Alicia] nor the Court has been able to find a single reported Indiana Case where a mere general denial of the execution of a Notarized document, absent some other corroborating evidence, has been held to be sufficient to rebut the statutory and evidentiary presumptions granted under Indiana Law; no matter how impassioned and often the simple denial is repeated.

* * *

12.) That, ... in the absence of some independently corroborating evidence, the Court concludes that the testimony by [Alicia] herein amounts to no more than a "mere general denial" which the Court now finds to be inadequate to rebut the presumption granted to [Perry] and all Peoples in the State of Indiana to be able to rely upon the execution of a Document before a Notary Public.

\* \* \*

14.) That, specifically, Indiana Law does *not* require [Perry] to produce any particular type of written evidence regarding debt; but rather, the requirement is merely that the evidence establish the debt and [its] terms and conditions; and therefore, the Real Estate Mortgages introduced into evidence herein and [Alicia's] own testimony clearly establish all of those terms.

Appellant's App. p. 25–29 (emphases in original). The trial court also found that, even if Alicia had not signed the mortgages, she had ratified them, and that she had failed to comply with Indiana Trial Rule 9.2(B).[1] The trial court entered judgment in Perry's favor in the amount of $303,250 on the first loan and $241,500 on the second loan. Additionally, the trial court ordered foreclosure of the mortgages. Alicia now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. *Menard, Inc. v. Dage–*

1. Indiana Trial Rule 9.2(B) provides as follows:

   When a pleading is founded on a written instrument and the instrument or a copy thereof is included in or filed with the pleading, execution of such instrument, indorsement, or assignment shall be deemed to be established and the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action without proving its execution unless execution be denied under oath in the responsive pleading or by an affidavit filed therewith. A denial asserting that another person who is not a party did execute the instrument, indorsement, or assignment may be made without such oath or affidavit only if the

*MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind. 2000). First, we consider whether the evidence supports the factual findings. *Id.* Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. *Menard,* 726 N.E.2d at 1210.

In conducting our review, we give due regard to the trial court's ability to assess the credibility of witnesses. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather, we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon,* 711 N.E.2d 1265, 1268 (Ind. 1999).

### II. Signatures

Alicia first argues that the trial court erroneously concluded that she is liable under the mortgages. Specifically, Alicia argues that the trial court erred by finding that (1) she failed to comply with Indiana Trial Rule 9.2(B), (2) she ratified the mortgages, and (3) she signed the mortgages.[2]

pleader alleges under oath or in an accompanying affidavit that after the exercise of reasonable diligence he was unable to make such person or his representative (subdivision (H)) a party, the reason therefor, and that he is without information as to such execution.

2. We note that Alicia failed to include a standard of review in her brief as mandated by Indiana Appellate Rule 46(A)(8)(b). Additionally, we note that Alicia fails to cite to any relevant cases or statutes, relying solely upon Trial Rule 9.2 and American Jurisprudence, which contravenes the requirements of Appellate Rule 46(A)(8)(a). We caution counsel to pay closer heed to the appellate rules in the future.

■ Although the trial court found for Perry based upon three separate legal theories, we can affirm based upon any one of those theories. We begin by focusing on the trial court's finding that Alicia failed to rebut the presumption under Indiana Code section 33–42–2–6 that she signed the mortgages. On appeal, Alicia argues that the evidence presented at trial was more than a mere denial, insisting that she proved her "non-participation in the mortgage executions" through her testimony and her handwriting samples.[3] Appellant's Br. p. 13.

Indiana Code section 33–42–2–6 provides that "[t]he official certificate of a notary public, attested by the notary's seal, is presumptive evidence of the facts stated in cases where, by law, the notary public is authorized to certify the facts." Consequently, Alicia's notarized signatures on the two mortgages are presumptive evidence that she, in fact, signed the mortgages.

Indiana Evidence Rule 301 governs the application of presumptions in civil actions:

In all civil actions and proceedings not otherwise provided for by constitution, statute, judicial decision or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. A presumption shall have continuing effect even though contrary evidence is received.

Our Supreme Court interpreted Evidence Rule 301 in *Schultz v. Ford Motor Co.*, 857 N.E.2d 977, 982–83 (Ind.2006), observing that there are two different approaches to the rule. The first approach is the "bursting bubble" theory, which minimizes the importance of presumptions:

a presumption is not evidence and is not to be weighed by the trier of fact as though it had evidentiary value. When the party against whom the presumption operates introduces evidence that disputes the presumed fact, the presumption ceases to operate, disappears from the case, and no longer remains to assist any party.

*Id.* at 982 (citing 12 Robert Lowell Miller, *Indiana Practice* § 301.102 at 188–89 (2d ed.1995)). The second approach provides that "the finder of fact would be required to find the presumed fact once the basic fact is established, unless the opponent of the presumption persuaded the factfinder of the nonexistence of the presumed fact." *Id.* at 982.

Our Supreme Court concluded that the latter approach is the better one. *Id.* at 984–85. Furthermore, the *Schultz* Court held that this approach is reflected in Evidence Rule 301, which instructs that "[a] presumption shall have continuing effect even though contrary evidence is received." Under this approach, a presumption "met by rebutting evidence effectively becomes an inference under Rule 301." 12 Robert Lowell Miller, Indiana Practice § 301.101 at 229 (3rd ed.2007). "An inference remains in the case despite the presentation of contrary proof and may be weighed with all the other evidence." *Id.*

Here, Indiana Code section 33–42–2–6 established a presumption that Alicia signed the notarized mortgages. She presented her testimony and her handwriting samples in an attempt to rebut that presumption. Once Alicia presented rebut-

---

**3.** Alicia also relies upon her affidavit, which was submitted in response to Perry's motion for summary judgment. However, the affidavit was cumulative of her testimony at trial.

ting evidence, the presumption effectively became an inference, which the trial court could weigh against her testimony and handwriting samples. After weighing the evidence, the trial court concluded that Alicia's evidence was "inadequate to rebut the presumption." Appellant's App. at 29.

On appeal, Alicia's argument that the trial court reached an erroneous conclusion is essentially a request that we reweigh her testimony and handwriting samples against the inference that she signed the mortgages. This would also require us to assess Alicia's credibility. As stated above, however, we neither reweigh the evidence nor assess witness credibility on appeal. *See Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 406 (Ind.2005) (holding that "[i]n the face of conflicting evidence, it is not within the province of an appellate court to reweigh the evidence or to reassess the credibility of the witnesses"). We cannot say that the trial court's finding on this issue is clearly erroneous. Because the trial court's judgment is sustainable based upon its finding that Alicia failed to rebut the presumption that she signed the mortgages, we need not address the trial court's additional findings that Alicia ratified the mortgages and failed to comply with Indiana Trial Rule 9.2(B).

### III. Damages

■ Alicia next argues that the trial court erred in determining the damages owed to Perry. According to Alicia, "[w]ithout the loan documents, loan histories, payment records, and other documentation, there is no way to determine the term of the loan, whether it is in fact in default, [and] whether any demand was placed upon Ceasario Bonilla a/k/a/ Cesario Bonilla for payment." Appellant's Br. p.

15. Thus, Alicia contends that "it was improper for the court to have assumed default status of the loan and that the full sum, plus interest from date of loan, are due and owing to plaintiff." *Id.*

The March 1984 mortgage recited a loan from Industrial National Bank to the Bonillas in the principal amount of $60,500.00 at an interest rate of 13.50%. Appellant's App. p. 189. The April 1985 mortgage provided that Industrial National Bank had loaned the Bonillas the principal amount of $82,000.00 with:

> interest at the rate of twelve [and] one half percent (12.50) per annum initially and at a varying rate per annum thereafter which shall be two percent (2.00%) per annum above the prime rate of this Lender and will fluctuate from day to day with such rate until maturity of the final installment, and with interest after maturity of the final installment at a rate two (2) percent per annum above the rate which would have been in effect according to the terms of this Note, until fully paid.

*Id.* at 182. Bonilla testified that no payments were made on the loans. Tr. p. 51. The trial court concluded that Bonilla owed $241,500 ($60,500 in principal and $176,000 in interest) on the 1984 mortgage and $303,250 ($82,000 in principal and $215,250 in interest) on the 1985 mortgage for a total of $544,750.[4]

In the first appeal of this matter, a different panel of this court considered the fact that Perry was unable to introduce the actual promissory notes underlying the mortgages, ultimately concluding that the notes' absence was no bar to recovery:

---

4. Alicia makes no argument concerning the trial court's calculation of the interest on the loans and has waived our review of the interest calculation. Waiver notwithstanding, we note that the 1985 mortgage is an adjustable rate mortgage and the trial court's interest calculation utilizes a straight 12.50% per annum rate, which is clearly erroneous.

In *Yanoff v. Muncy*, 688 N.E.2d 1259 (Ind.1997), our supreme court considered whether a plaintiff in a foreclosure action needs to produce the promissory note in order to recover the debt. There, Yanoff was unable to produce the promissory note underlying the debt owed to him. *Id.* at 1261–62. Regarding the establishment of the existence of the debt, the court relied on Indiana Code section 26–1–3.1–309, which provides, in pertinent part:

(a) A person not in possession of an instrument is entitled to enforce the instrument if:

(1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred;

(2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and

(3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(b) A person seeking reinforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, IC 26–1–3.1–308 applies to the case as if the person seeking enforcement had produced the instrument.

688 N.E.2d at 1262 (citing Ind.Code section 26–1–3.1–309 (2002)). Yanoff argued, and our supreme court agreed, that Yanoff "produced evidence of a promissory note or other written evidence of a debt sufficient to support his claim." *Id.* at 1262. *After the debtor's testimony provided the court with the essential terms of the debt, such as the amount of the original debt, the interest rate, the existence of a mortgage securing the debt, and the schedule of payments, the court held that such "evidence . . . is enough to prove both the existence of the promissory note underlying the mortgage and its essential terms." Id.* at 1263.

Here, the trial court's order granting Bonilla's motion for judgment on the evidence included, in pertinent part: "The Court feels Plaintiff failed to meet its burden of proof at trial because Plaintiff failed to introduce the promissory notes, upon which its claim is based." Appellant's App. p. 13. This was an error of law. Pursuant to Indiana Code section 26–1–3.1–309 and our supreme court's holding in *Yanoff, Perry is not required to present the promissory notes underlying the debts in question in order to proceed with its case.*

*Comm'l Servs.*, slip op. p. 5–6 (emphases added). The law of the case doctrine, therefore, establishes that Perry is not required to introduce those promissory notes into evidence to recover the debt. *See Perry v. Gulf Stream Coach, Inc.*, 871 N.E.2d 1038, 1048–49 (Ind.Ct.App.2007) (explaining that the law of the case doctrine provides that "an appellate court's determination of a legal issue is binding in subsequent appeals given the same case and substantially the same facts").

Notwithstanding the absence of evidence regarding the specific terms of the promissory notes, the record *does* contain undisputed evidence establishing the terms, dates, amounts of, and interest rates on the two mortgages. Additionally, Alicia conceded that no payments have been made on these mortgages since they were

executed over twenty years ago. Although we do not have the precise terms of the promissory notes in the record, the *only* reasonable inference to draw from this evidence is that the failure to make a single payment on the notes in over twenty years is an event of default. It would be erroneous to draw any other conclusion. Having drawn that conclusion, the only remaining task is calculating the amount owed by Alicia based on the undisputed numbers in the record. Inasmuch as the parties raise no argument about the trial court's calculation, we affirm.

The judgment of the trial court is affirmed.

MATHIAS, J., concurs.

BROWN, J., concurs in part and dissents in part with opinion.

BROWN, Judge concurring in part and dissenting in part.

I respectfully concur in part and dissent in part. I concur with the majority's analysis and determination of the first issue, namely that Bonilla is liable under the mortgages. As to the second issue, I dissent, finding that Perry failed to prove default under the terms of the notes.

In *Yanoff v. Muncy,* the Indiana Supreme Court noted that "a mortgagee must affirmatively establish the amount owed to him in order to recover, and that any doubt or uncertainty should operate against the mortgagee and not for him." 688 N.E.2d 1259, 1263 (Ind.1997). However, "amounts established by undisputed evidence remain collectible." *Id.* In *Yanoff,* the Court held that testimony by a debtor was "enough to prove both the existence of the promissory note underlying the mortgage and the essential terms." *Id.* The debtor there testified as to the amount of the original debt, the interest rate, the existence of the mortgage, the schedule of payments, and the fact that he still owed money on the debt. *Id.*

Here, evidence on the essential terms is missing. Specifically, no evidence was presented on the terms of the promissory notes, the payment requirements, or what constituted an event of default. Were the notes due in one year? Were they due in ten years? Were they due in 30 years? Although the majority infers default because Bonilla testified that no payments had been made, without the terms of the notes and the payment requirements, I am unable to agree that the evidence presented proved that the loans are in default.

For these reasons, I respectfully concur in part and dissent in part.